UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------

PAUL PARSHALL,

               Plaintiff,

      v.

NEW YORK COMMUNITY BANCORP,
INC., THOMAS R. CANGEMI, HANIF
DAHYA, JAMES J. O'DONOVAN,
DOMINICK CIAMPA, LESLIE D. DUNN,
LAWRENCE ROSANO, JR., RONALD A.
ROSENFELD, LAWRENCE J. SAVARESE,
JOHN M. TSIMBINOS, and ROBERT
WANN,

               Defendants.

-------------------------------------------------------

Case No. _____

**COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS**

JURY TRIAL DEMANDED

Plaintiff Paul Parshall ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE OF THE ACTION**

1.      Plaintiff brings this action against New York Community Bancorp, Inc. ("NYCB" or the "Company") and the members of NYCB's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9.  By the action, Plaintiff seeks to enjoin the vote on a proposed transaction pursuant to which Flagstar Bancorp, Inc. ("Flagstar") will be acquired by the Company through NYCB's subsidiary, 615 Corp. ("Merger Sub") (the "Proposed Transaction").[1]

_____

[1] Non-party Flagstar is a Michigan corporation with its principal executive offices located at 5151 Corporate Drive, Troy, Michigan 48098.  Non-party Merger Sub is a Delaware corporation and a direct, wholly owned subsidiary of NYCB.

2.      On April 26, 2021, Flagstar and NYCB jointly announced their entry into an Agreement and Plan of Merger dated April 24, 2021 (the "Merger Agreement") to sell Flagstar to NYCB.  The Merger Agreement provides that Flagstar stockholder will receive 4.0151 shares of NYCB common stock for each share of Flagstar common stock they own (the "Merger Consideration").  Following completion of the merger, the NYCB shares held by NYCB shareholders immediately prior to the transaction are expected to collectively represent approximately 68% of the combined company and the NYCB shares issued to Flagstar shareholders in the merger are expected to represent approximately 32% of the combined company. [2]

3.      On June 25, 2021, NYCB filed a Form 424B3 (the "Prospectus") with the SEC.  The Prospectus, which recommends that NYCB stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision.  Defendants authorized the issuance of the false and misleading Prospectus in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section

---

[2] The approximate value of the Proposed Transaction is $2.6 billion.

27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7.     This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  Moreover, NYCB's common stock trades on the New York Stock Exchange, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

9.     Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of NYCB.

10.     Defendant NYCB is a Delaware corporation with its principal executive offices located at 615 Merrick Avenue, Westbury, New York 11590.  NYCB is the parent of New York Community Bank ("NYCB Bank" or the "Bank").  NYCB's common stock trades on the New York Stock Exchange under the ticker symbol "NYCB."

11.     Defendant Thomas R. Cangemi ("Cangemi") has been Chairman of the Board since March 26, 2021, and President, Chief Executive Officer ("CEO"), and a director of the Company and the Bank since December 31, 2020.

12.     Defendant Hanif Dahya ("Dahya") is Presiding Director and has been a director of the Company since 2007.

13.     Defendant James J. O'Donovan ("O'Donovan") has been a director of the Company since 2003.  Defendant O'Donovan served as Chief Lending Officer of the Bank from January 1987, and of the Company from July 1993, until his retirement on January 31, 2005.  From November 1,

2003 through January 31, 2005, defendant O'Donovan also served as Senior Executive Vice President of the Company and the Bank, having previously held the corporate titles of Executive Vice President from 2001 and Senior Vice President from 1987.

14.     Defendant Dominick Ciampa ("Ciampa") has been a director of the Company and the Bank since 1995.  Defendant Ciampa also previously served as non-executive Chairman of the Board from January 3, 2011 to January 5, 2021.

15.     Defendant Leslie D. Dunn ("Dunn") has been a director of the Company and the Bank since 2015.

16.     Defendant Lawrence Rosano, Jr. ("Rosano") has been a director of the Company and the Bank since July 22, 2014.

17.     Defendant Ronald A. Rosenfeld ("Rosenfeld") has been a director of the Company and the Bank since January 1, 2012.

18.     Defendant Lawrence J. Savarese ("Savarese") has been a director of the Company and the Bank since March 2013.

19.     Defendant John M. Tsimbinos ("Tsimbinos") has been a director of the Company since 1999.

20.     Defendant Robert Wann ("Wann") has been Senior Executive Vice President and Chief Operating Officer ("COO") of the Company since 2003, and a director of the Company since 2007.  Defendant Wann also previously served as the Company's Chief Financial Officer ("CFO").

21.     Defendants identified in paragraphs 11-20 are referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

22.     On April 26, 2021, NYCB and Flagstar jointly announced in relevant part:

WESTBURY, N.Y. and TROY, Mich., April 26, 2021 -- New York Community Bancorp, Inc. (NYSE: NYCB) ("New York Community") and Flagstar Bancorp, Inc. (NYSE: FBC) ("Flagstar"), jointly announced today that they have entered into a definitive merger agreement under which the two companies will combine in an all stock merger.

Under the terms of the agreement, which was unanimously approved by the Boards of Directors of both companies, Flagstar shareholders will receive 4.0151 shares of New York Community common stock for each Flagstar share they own.  Following completion of the transaction, the New York Community shares held by New York Community shareholders immediately prior to the transaction are expected to collectively represent approximately 68% of the combined company and the New York Community shares issued to Flagstar shareholders in the merger are expected to represent approximately 32% of the combined company.  The implied total transaction value based on closing prices as of April 23, 2021 is approximately $2.6 billion.

The new company will have over $87 billion in assets and operate nearly 400 traditional branches in nine states and 87 loan production offices across a 28 state footprint.  It will have its headquarters on Long Island, N.Y. with regional headquarters in Troy, MI, including Flagstar's mortgage operations.  The combined company will maintain the Flagstar Bank brand in the Midwest.  Flagstar's mortgage division will also maintain the Flagstar brand.  Other states will retain their current branding.

Thomas R. Cangemi will be President and Chief Executive Officer of the combined company and Alessandro (Sandro) P. DiNello, Flagstar's current President and Chief Executive Officer, will become Non-Executive Chairman with John Pinto serving as Senior Executive Vice President and Chief Financial Officer of the combined company.  Lee M. Smith will continue to lead the mortgage division as Senior Executive Vice President and President of Mortgage and Reginald Davis will head up consumer and commercial banking and serve as Senior Executive Vice President and President of Banking.  The remaining key roles will combine the best talent from both companies.  The Board of Directors will be comprised of 12 directors – eight from New York Community and four from Flagstar.

Commenting on the transaction, Thomas R. Cangemi stated, "When I was appointed President and CEO of New York Community earlier this year, one of my top priorities was to seek out a like-minded partner that would provide NYCB with a diversified revenue stream, an improved funding mix, and leverage our scale and technology, as we transition away from a traditional thrift model.  In Flagstar, we have found such a like-minded partner.  The combination of our two companies will allow each of us to continue our transformation to a full-service commercial bank by broadening our product offerings while expanding our geographic reach with no branch overlap.  Over the past several months, I have gotten to know the Board and management team of Flagstar and found that we share the same values and commitment to our employees, customers, and the communities which we serve.  Importantly, we both hold shareholder value as paramount.  Sandro and his team have done a terrific job at Flagstar and I look forward to working closely with them as we build a bank for the

future.  The merger of our two organizations will provide us with a larger platform, a more robust product offering, a strong employee talent pool, and significant balance sheet size to accelerate our transformation into a high performing commercial bank."

"For Flagstar, this is a unique opportunity," said Alessandro DiNello, President and Chief Executive Officer of Flagstar Bancorp.  "With our existing Flagstar platform, we had every expectation of continuing to build on our success as a leader in creating value in the mid-size bank space.  Now, in partnership with NYCB, we are positioned to further accelerate everything we've been doing during my tenure as Flagstar's CEO to build a best-in-class commercial bank, supported by one of the best mortgage and servicing businesses in the country.

"Tom is a young, dynamic CEO who shares my vision.  Together his team and the Flagstar team will grow our combined businesses smartly and safely.  I'm immensely proud of what we have achieved at Flagstar and can't wait to see all we will accomplish as we supercharge our respective businesses through this transaction."

The transaction is expected to close by the end of 2021, subject to the satisfaction of customary closing conditions, including the receipt of the requisite regulatory approvals and the requisite approval by the shareholders of each company.

### *Key Benefits of the Proposed Transaction*

**Financially Attractive Metrics:**

- The transaction is expected to be 16% accretive to NYCB's earnings per share in 2022 (assuming fully phased-in cost savings)
- Also expected to be 3.5% accretive to NYCB's tangible book value per share
- Exceptional pro-forma profitability with ROAA of 1.2% and ROATCE of 16%
- Strong pro-forma capital ratios and reserve coverage
- Enhanced capital generation after dividend of $500 million, annually
- NYCB dividend maintained

**Strategically Compelling:**

- Accelerates our transition towards building a dynamic commercial banking organization
- Creates a top-tier regional bank with significant scale and geographic and business line diversification
- Drives strong financial results and enhances capital generation
- Improves funding profile and interest rate risk positioning
- Market-leading rent-regulated multi-family lender, mortgage originator and servicer
- Maintains each Bank's unique low credit risk model
- Combines two strong management teams and boards

**Transaction will Benefit Communities, Customers, and Employees:**

- Both companies' long standing commitment to their communities will be enhanced
- Expands product offerings to our joint customer base
- Shared values and company missions

Piper Sandler & Co. and Goldman Sachs & Co. LLC served as financial advisors to New York Community in connection with the transaction.  Sullivan & Cromwell LLP served as legal advisor.

Morgan Stanley & Co. LLC and Jefferies LLC acted as financial advisors to Flagstar. Skadden, Arps, Slate, Meagher & Flom LLP served as legal advisor.

## The Prospectus Contains Material Misstatements and Omissions

23.     The defendants filed a materially incomplete and misleading Prospectus with the SEC and disseminated it to NYCB's stockholders.   The Prospectus misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction.

24.     Specifically, as set forth below, the Prospectus fails to provide Company stockholders with material information or provides them with materially misleading information concerning, among other things, the pro forma company's financial projections and the financial valuation analyses underlying the fairness opinions provided by the Company's financial advisors Piper Sandler & Co. ("Piper Sandler") and Goldman Sachs & Co. LLC ("Goldman").

### *Material Omissions Concerning the Pro Forma Company's Financial Projections and Piper Sandler's and Goldman's Financial Analyses*

The Prospectus fails to disclose material information concerning the financial projections for the pro forma combined company, including the  (a) the estimates of EPS of NYCB on a pro forma basis for 2023, 2024 and 2025; and (b) the estimated dividends to be paid per share of NYCB common stock on a pro forma basis.

25.     The Prospectus also fails to disclose material information concerning Piper Sandler's and Goldman's financial analyses.

26.     The Prospectus describes Piper Sandler's and Goldman's fairness opinions and the various valuation analyses underlying their opinions.  That description, however, fails to include key inputs and assumptions underlying these analyses.  Without this information, NYCB's public stockholders are precluded from understanding these analyses.  As a result, stockholders cannot determine what weight, if any, to place on Piper Sandler's and Goldman's fairness opinions in deciding how to vote with respect to the Proposed Transaction.

27.     With respect to Piper Sandler's *Comparable Company Analyses* for NYCB and Flagstar and *Analysis of Precedent Transactions*, the Prospectus fails to disclose the individual financial metrics for each of the companies and transactions analyzed, respectively.

28.     With respect to Piper Sandler's *Net Present Value Analysis* of NYCB and Flagstar, the Prospectus fails to disclose: (a) the EPS and dividends per share estimates used in the analysis; (b) the terminal metric used to derive the terminal values for NYCB and Flagstar and quantification thereof; (c) the terminal value of NYCB and Flagstar; and (d) the inputs and assumptions underlying the discount rates ranging from 8.0% to 13.0% in the case of NYCB and 9.0% to 14.0% in the case of Flagstar.

29.     With respect to Piper Sandler's *Pro Forma Transaction Analysis*, the Prospectus fails to disclose: (a) the assumptions relating to transaction expenses, purchase accounting adjustments and cost savings, adjustments for CECL accounting standards and granting of restrict stock awards by Flagstar; and (b) the (i) accretion to NYCB's estimated EPS (excluding one-time transaction costs and expenses), and (ii) accretion to NYCB's estimated tangible book value per share.

30.     With respect to Goldman's *Illustrative Present Value of Future Stock Price Analysis for Flagstar on a Stand-Alone Basis*, *Illustrative Present Value of Future Stock Price Analysis for NYCB on a Stand-Alone Basis*, and *Illustrative Present Value of Future Stock Price Analysis for NYCB on a Pro Forma Basis*, the Prospectus fails to disclose: (a) the estimates of EPS of NYCB on

a pro forma basis for 2023, 2024 and 2025; (b) the estimated dividends to be paid per share of NYCB common stock on a pro forma basis; and (c) the inputs and assumptions underlying the discount rate of 8.5% for Flagstar, 7.0% for NYCB, and 7.50% for NYCB on a pro forma basis.

31.     With respect to Goldman's *Regression Analysis for Flagstar on a Stand-Alone Basis*, *Regression Analysis for NYCB on a Stand-Alone Basis*, and *Regression Analysis for NYCB on a Pro Forma Basis* the Prospectus fails to disclose: (a) Flagstar's, NYCB's, and the pro forma company's respective 2022 estimated return on average tangible common equity; and (b) Flagstar's, NYCB's and the pro forma company's respective TBV per share as of March 31, 2021.

32.     With respect to Goldman's *Illustrative Discounted Dividend Analyses for Flagstar on a Stand-Alone Basis*, *Illustrative Discounted Dividend Analyses for NYCB on a Stand-Alone Basis*, and *Illustrative Discounted Dividend Analyses for NYCB on a Pro Forma Basis* the Prospectus fails to disclose: (a) Flagstar's, NYCB's, and the pro forma company's respective terminal year 2026 net income; (b) the terminal values of Flagstar, NYCB and the pro forma company; and (c) the inputs and assumptions underlying the discount rates ranging from 6.5% to 10.5% for Flagstar, 6.0% to 8.0% for NYCB and 6.50% to 8.50% for NYCB pro forma.

33.     The omission of this information renders the statements in the "Certain Unaudited Prospective Financial Information" and "Opinion of NYCB's Financial Advisors" sections of the Prospectus false and/or materially misleading in contravention of the Exchange Act.

34.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Prospectus.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of NYCB will be unable to make a sufficiently informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

35.     Plaintiff repeats all previous allegations as if set forth in full.

36.     During the relevant period, defendants disseminated the false and misleading Prospectus specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

37.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Prospectus.  The Prospectus was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the pro forma company's financial projections and the financial analyses performed by the Company's financial advisors.  The defendants were at least negligent in filing the Prospectus with these materially false and misleading statements.

38.     The omissions and false and misleading statements in the Prospectus are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

39.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

40.     Because of the false and misleading statements in the Prospectus, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of
### Section 20(a) of the Exchange Act

41.     Plaintiff repeats all previous allegations as if set forth in full.

42.     The Individual Defendants acted as controlling persons of NYCB within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of NYCB, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Prospectus filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

43.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Prospectus and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

44.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Prospectus at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Prospectus.

45.     In addition, as the Prospectus sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Prospectus purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

46.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

47.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, NYCB's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of NYCB, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to NYCB stockholders;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  July 26, 2021

WEISSLAW LLP

By

Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: racocelli@weisslawllp.com

**OF COUNSEL:**

**LONG LAW, LLC**
Brian D. Long
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Tel: (302) 729-9100
Email: bdlong@longlawde.com

*Attorneys for Plaintiff*